[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 20, 2012
JOHN LEY
CLERK

No. 11-14439
Non-Argument Calendar
_____

D.C. Docket No. 2:11-cv-14044-FJL


NACHELLE JORDAN,

Plaintiff - Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 20, 2012)

Before CARNES, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Nachelle Jordan appeals the district court's order affirming the

Commissioner of Social Security's (Commissioner's) denial of her application for supplemental security income benefits based upon her alleged disability. 42 U.S.C. §§ 405(g), 1383(c)(3). Jordan contends that the Administrative Law Judge (ALJ) erred in finding that she was ineligible for benefits under either the listings for child or adult mental retardation. She also challenges the ALJ's failure to elicit testimony from a vocational expert (VE) in determining that she was capable of substantial gainful activity. After careful consideration, we affirm.

I.

Our review of the ALJ's decision is limited; we ask only whether it was supported by substantial evidence and was based upon the correct legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (internal quotation marks omitted). Substantial evidence need only be what a reasonable person would accept as adequate to support a conclusion. *Crawford*, 262 F.3d at 1158 (citation omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for

2

that of the Commissioner." *Dyer*, 295 F.3d at 1210 (internal quotation marks and alteration omitted). Where, as here, the Appeals Council denies review of the ALJ's decision, we review the ALJ's decision as the final decision of the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).

## II.

Jones argues that she was entitled to benefits both before and after she turned 18 because she satisfied the descriptions in the social security listings for child mental retardation and adult mental retardation.

For adults, "[t]he social security regulations establish a five-step evaluation process, which is used to determine disability . . . ." *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005). Jones first contends that the ALJ's determination at the third step of this process was erroneous. In that step, the question is "whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments," and the claimant bears the burden of proof. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Jones directs our attention to the Listing for adult mental retardation, 20 C.F.R. part 404, subpart P, appendix 1, § 12.05 ("Listing 12.05"), and claims that she has satisfied its requirements.

For persons under the age of 18, the analytical framework is somewhat different, requiring that a claimant show "a medically determinable physical or mental

impairment, which results in marked and severe functional limitations, and which . . . can be expected to last for a continuous period of not less than 12 months" in order to be entitled to SSI benfits. 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.924. Jones contends that the ALJ erroneously rejected her contention that she had demonstrated a mental impairment by satisfying the requirements of the Listing that describes child mental retardation, 20 C.F.R. part 404, subpart P, appendix 1, § 112.05 ("Listing 112.05").

Although the overarching analytical framework for child and adult diability claims varies, the elements of Listings 112.05 and 12.05 substantially overlap, and the regulations provide guidance about how ALJs and courts are to apply both. A claimant must satisfy both "the diagnostic description in the introductory paragraph *and* any one of" several additional criteria. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00 (emphasis supplied); *id.* § 112.00 (same). The introductory paragraphs for both Listings, in turn, require "significantly subaverage general intellectual functioning with deficits in adaptive functioning," for adults, manifested prior to age 22. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05; *id.* § 112.05. As both the Listings and our cases make plain, a claimant must demonstrate both subaverage intellectual functioning and deficits in adaptive functioning, as well satisfying one of the additional criteria, to prove entitlement to disability benefits under Listing 12.05 or

112.05.  *See Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); *see also*

*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his

impairment matches a listing, it must meet *all* of the specified" requirements — "[a]n

impairment that manifests only some . . . no matter how severely, does not qualify.").

Here, Dr. Bruce Borkosky, a psychologist who evaluated Jordan in 2006,

concluded that her overall mental status was "low average," and diagnosed her with

"borderline intellectual functioning," a diagnosis that is mutually exclusive of mental

retardation.  *See* Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental

Disorders 47-48, 741 (4th ed. text rev. 2000) (explaining the importance of

diagnostically "[d]ifferentiating Mild Mental Retardation from Borderline Intellectual

Functioning" based upon "careful consideration of all available information").  State

agency psychologists Dr. David Guttman and Dr. Thomas Conger made the same

diagnosis.  The ALJ found, based upon Jordan's own testimony, her report card, and

an evaluation by one of her teachers, that Jordan had completed the 11th grade without

repeating any grade, principally in "general education classes," and was ranked in the

top 1/3 of her high school class.  She was able to read and write as well as perform

basic math, albeit with some difficulty in division.  Thus, ample evidence supported

the conclusion that Jordan did not specifically meet either Listing.

Nor did she demonstrate that her mental impairment was equivalent to the

5

Listings.  In order to demonstrate that her deficits in adaptive functioning were functionally equivalent to the Listings, Jordan was required to demonstrate a "marked" limitation in two, or "extreme" limitation in one, of six "domains," which set forth broad areas of functioning.  20 C.F.R. § 416.926a(b)(1).  Jordan's special education teacher identified only minor problems with any of the domains and a childhood disability evaluation completed by two state agency medical consultants, Thomas Peele and Dr. Jane Cormier, determined that Jordan had "less than marked" limitations in four of the domains, with no limitations at all in the other two.  Dr. Guttman and Dr. Conger also expressly concluded that Jordan's impairments did not meet, medically equal, or functionally equal the Listings' requirements.  The ALJ expressly gave "great weight" to these assessments.

Jordan's contention that she satisfied Listings 112.05 and 12.05 essentially ignores the requirements in the Listings' introductory paragraphs and focuses exclusively upon the several subsequent criteria.  And, in so doing, she asks us to discount the opinions of multiple mental health experts and to give greater weight to her testimony and that of her mother, both of which the ALJ determined were entitled only to minimal weight.  This we may not do.  *Moore*, 405 F.3d at 1211.  The mental health opinions of Dr. Borkosky, Jordan's special education teacher, and the state agency mental health experts supported the conclusion that Jordan did not manifest

6

the deficits set forth in the Listings' introductory paragraphs. Therefore, substantial evidence supported the ALJ's determination that Jordan was not disabled because her mental impairment did not meet, medically equal, or functionally equal either the child or adult mental retardation Listings.

## III.

Even if her claim to disability under the mental retardation Listings cannot succeed, Jordan argues that the ALJ erred in deciding, without consulting a VE, that she was not disabled.[1]

Because the ALJ found that Jordan had a severe combination of impairments that did not satisfy any Listing and no past work experience, the Commissioner bore the burden to "show the existence of other jobs in the national economy which, given [Jordan's] impairments, [she] can perform." *Jones v. Apfel*, 190 F.3d 1224, 1228-29 (11th Cir. 1999). Unless "the claimant cannot perform a full range of work at a given level of exertion or the claimant has non-exertional impairments that significantly limit basic work skills," the Commissioner may meet this burden by relying on the Medical-Vocational Guidelines, also known as the Grids. *Id.* at

---

[1] Jordan has only challenged the ALJ's decision that a VE's testimony was unnecessary based upon the effect of her mental impairments. Therefore, we do not address the effect, if any, of Jordan's physical impairments upon her residual functional capacity. *Norelus v. Denny's, Inc.*, 628 F.3d 1270, 1296-97 (11th Cir. 2010); *Stewart v. Dept. of Health and Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994).

7

1229. In this case, the ALJ found that Jordan had the residual functional capacity to perform medium exertional work and that her non-exertional impairments did not significantly affect the types of work that she could perform. The ALJ relied exclusively upon the Grids to reach this conclusion.

Jordan argues that borderline intellectual functioning constitutes a significant non-exertional limitation on her basic work skills, that the ALJ's decision to the contrary was not supported by substantial evidence, and, thus, that a VE's testimony was required. Although borderline intellectual functioning may, in conjunction with other conditions, contribute to a finding that an individual's impairments significantly limit her basic work skills, there is no merit to Jordan's suggestion that it mandates that conclusion. *See Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989) (holding that borderline intellectual functioning in conjunction with a series of other mental, physical, and emotional impairments precluded reliance upon the Grids).

All of the jobs listed in the Grids are unskilled, meaning that they require "little or no judgment" in the performance of "simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a); 20 C.F.R. pt. 404, subpt.

P, app. 2, § 200.00(b) (stating that jobs in the Grids are unskilled).[2] Only if a claimant's impairment significantly limits her ability to perform such duties is the testimony of a VE strictly required. *Jones*, 120 F.3d at 1228-29.

Jordan had a driver's license, she was able to perform simple math, read, and write, and she agreed that she had no difficulty making change. At least four state agency evaluators determined that she had no limitation in moving and manipulating objects, and little limitation in acquiring and using information, attending and completing tasks, and interacting and relating with others. No evidence suggested that Jordan's impairments — which according to multiple evaluations were relatively minor while Jordan was under the age of 18 — worsened after she attained the age of 18. And Jordan had successfully completed a formal education through the 11th grade. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, § 203.25 (stating that younger individual with the residual functional capacity to perform medium work who has a limited education and no work experience is not disabled); 20 C.F.R. § 416.964(b)(2) (stating that formal education through the 11th grade constitutes a limited education).

---

[2] For the first time on appeal, Jordan argues that VE testimony was required because at least some unskilled jobs require a certain reasoning level, as defined in the *Dictionary of Occupational Titles*. This argument is waived. *See Crawford v. Comm'r of Soc. Sec.*, 185 F.3d 1211, 1215 (11th Cir. 1999).

Thus, although Jordan is correct that contrary evidence exists, substantial evidence supported the ALJ's finding that Jordan's capacity for unskilled medium work was not significantly compromised by her non-exertional mental impairments. For that reason, the ALJ did not err in relying on the Grids, without testimony from a VE, to establish the existence of jobs in the national economy that Jordan could perform and, thereby, to conclude that she was not disabled.

## IV.

After thorough review of the record, the decisions of the ALJ and the district court, and the parties briefs, we affirm the Commissioner's denial of benefits.

**AFFIRMED**.