[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13243
Non-Argument Calendar
_____

D.C. Docket No. 2:10-cv-00632-DNF


PETER OWENS, II,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 28, 2013)

Before BARKETT, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Peter Owens, II, appeals the magistrate judge's order affirming the Social

Security Administration's denial of his application for disability insurance benefits,

42 U.S.C. § 405(g), and supplemental security income, 42 U.S.C. § 1383(c)(3). On appeal, Owens argues that the Administrative Law Judge ("ALJ") erroneously concluded that Owens's nonexertional limitations fell short of significantly affecting the occupational base, without obtaining the testimony of a vocational expert ("VE"). He further argues that, at a minimum, the ALJ failed to provide sufficient reasoning to permit a court to conclude that it conducted the proper legal analysis. Upon careful review of the record and the parties' briefs, we vacate and remand to the district court with instructions to remand the case to the Commissioner for further proceedings consistent with this opinion.

We review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). Substantial evidence is "more than a scintilla" and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Id.* (quotations omitted). Nevertheless, the failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991); *see also Winschel*, 631 F.3d at 1179 (explaining that, when the ALJ fails to state with at least some measure of clarity the grounds for his decision, we will decline to affirm simply because some rationale might have supported the ALJ's conclusion).

The Commissioner uses a five-step, sequential evaluation process to determine whether a claimant is disabled. *Winschel*, 631 F.3d at 1178. The first three steps ask whether the claimant (i) is currently engaged in substantial gainful activity and (ii) has a severe impairment or combination of impairments (iii) that meets or equals the severity of the specified impairments in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The fourth step asks whether, based on an assessment of the claimant's residual functional capacity ("RFC"), the claimant can perform any of his or her past relevant work. *Id.* The RFC is that which an individual is still able to do despite the limitations caused by his or her impairments. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The ALJ must consider all of the evidence in the record in determining the claimant's RFC. *See id.*

The final step asks whether there are significant numbers of jobs in the national economy that the claimant can perform, given his RFC, age, education, and work experience. *Winschel*, 631 F.3d at 1178. The Commissioner bears the burden at step five to show the existence of such jobs. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). Accordingly, the ALJ has the obligation to develop a full and fair record with substantial evidence showing that there are specific jobs in the national economy that the claimant can perform. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1227

(11th Cir. 2002) ("The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture.").

There are two avenues by which the ALJ may determine whether a claimant has the ability to adjust to other work in the national economy: (i) by applying the 20 C.F.R. Part 404 Medical-Vocational Guidelines (the "Grids"); and (ii) by the use of a VE, an expert on the kinds of jobs an individual can perform based on his capacity and impairments. *Phillips*, 357 F.3d at 1239-40. Exclusive reliance on the Grids is inappropriate when the claimant is unable to perform a full range of work at a given RFC. *Id.* at 1242. If the ALJ concludes that the claimant cannot perform a full range or unlimited types of work at the claimant's RFC given his exertional limitations, then the ALJ must consult a VE to determine whether there are sufficient jobs at the claimant's RFC within the national economy that the claimant can perform. *Id.*

If the ALJ concludes that the claimant can perform a full range or unlimited types of work at the claimant's RFC despite any exertional limitations, the ALJ next must determine to what extent the claimant's nonexertional limitations affect his ability to secure employment at the claimant's RFC in the national economy. *Id.* at 1242-43. If nonexertional impairments exist, the ALJ may use the Grids as a framework to evaluate vocational factors, but must also introduce independent

4

evidence, preferably through VE testimony, of the existence of jobs in the national economy that the claimant can perform. *Wilson*, 284 F.3d at 1227; *Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996); *see also Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("An ALJ's conclusion that a claimant's limitations do not significantly compromise his basic work skills or are not severe enough to preclude him from performing a wide range of light work is not supported by substantial evidence unless there is testimony from a [VE]."); *Allen*, 880 F.2d at 1201 ("Even a mild mental impairment may prevent a claimant from engaging in the full range of jobs contemplated by the exertional category for which the claimant otherwise qualifies." (quotations and alteration omitted)).

Here, once the ALJ determined that Owens was unable to perform any past relevant work, the burden shifted to the Commissioner to show the existence of jobs in the national economy which, given Owens's impairments, he could perform. *See Jones*, 190 F.3d at 1228. The ALJ concluded that, based on his exertional limitations, Owens retained the residual functional capacity to perform unskilled medium work and that his nonexertional limitations did not significantly limit his basic work skills at this level. However, despite the existence of nonexertional impairments, the ALJ did not introduce independent evidence to support this conclusion—whether by way of VE testimony or otherwise— articulating specific jobs in the national economy that Owens can perform, and

therefore failed to develop a full and fair record with substantial evidence on this issue. *See Wilson*, 284 F.3d at 1227; *Wolfe*, 86 F.3d at 1077-78; *Allen*, 880 F.2d at 1201.

The ALJ's next conclusion—that "the additional limitations have little or no effect on the occupational base of unskilled medium work"—lacks sufficient clarity to allow a reviewing court to determine that the proper legal analysis was conducted. *See Winschel*, 631 F.3d at 1179; *Cornelius*, 936 F.2d at 1145-46. Even if we assume that the ALJ's vague reference to "the additional limitations" was intended to refer to Owens's nonexertional limitations, there is no indication of which nonexertional limitations the ALJ considered in making this conclusion. Nor is there any indication of the reason or reasons why the ALJ arrived at this conclusion.

The ALJ's final conclusion likewise lacks adequate reasoning to show that the proper analysis was conducted. The ALJ concluded, "The claimant's ability to understand, carry out, and remember simple instructions, use judgment in making work-related decisions, respond appropriately to supervision, co-workers and usual work situations, and[] deal with changes in a routine work setting does not substantially limit the occupational base." Even if we assume that the ALJ intended in this sentence to refer to Owens's *limitations*—as opposed to his abilities—the ALJ provided no explanation of how he arrived at this conclusion.

6

In sum, the ALJ failed to develop a full and fair record with substantial evidence showing that there are specific jobs in the national economy that Owens can perform, and to provide sufficiently clear reasoning to show that the proper legal analysis has been conducted.  The magistrate therefore erred when he affirmed the decision of the ALJ.  Accordingly, we vacate and remand to the district court with instructions to remand the case to the Commissioner for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**