[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-11013
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cv-00169-JRH-BKE

FREDERICK BERNARD FREEMAN,

Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(November 25, 2014)

Before WILLIAM PRYOR, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Frederick Freeman appeals the Social Security Administration's denial of his application for supplemental security income.  On appeal, Mr. Freeman argues that substantial evidence does not support the Administrative Law Judge's finding that his lower back pain was not a severe impairment.  He also challenges the ALJ's determination that he retained the residual functional capacity to perform a wide range of medium work, arguing that his limitations on standing and walking instead limit him to sedentary work.  Finally, he argues that the ALJ improperly applied the Medical Vocational Guidelines ("the Grids") and posed incomplete hypothetical questions to the vocational expert in determining whether there where sufficient jobs in the national economy that Mr. Freeman could perform.  After careful review of the record and the parties' briefs, we affirm.

**I**

We review the ALJ's decision for substantial evidence, but the application of legal principles *de novo*.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  We may not "decid[e] the facts anew, mak[e] credibility determinations, or re-weigh[] the evidence."  *Id.*  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

In order to determine whether a claimant is disabled, the SSA applies a five-step sequential evaluation.    20 C.F.R. § 404.1520(a)(1); 20 C.F.R.

2

§ 416.920(a). Under the first step, the claimant has the burden to show that he is not currently engaged in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). At the second step, the claimant must show that he has a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). At step three, the claimant has the opportunity to show that he has an impairment or combination of impairments that meets or equals the criteria contained in one of the Listings. *Id.* § 404.1520(a)(4)(iii). At the fourth step, if the claimant cannot meet or equal the criteria in one of the Listings, the ALJ considers the claimant's residual functional capacity and the claimant's past relevant work to determine if he has an impairment that prevents him from performing his past relevant work. *Id.* § 404.1520(a)(4)(iv). Finally, once a claimant establishes that he cannot perform his past relevant work due to some severe impairment, the burden shifts to the Commissioner to show that significant numbers of jobs exist in the national economy which the claimant can perform. *Id.* § 404.1520(a)(4)(v).

## II

The ALJ's determination that Mr. Freeman's lower back pain was not a severe impairment is supported by substantial evidence. An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental abilities to perform basic work activities. 20 C.F.R. §§ 416.920(c), 416.921(a). *See id.* § 416.921(b)(1) (defining basic work activities

3

to include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"). Mr. Freeman has not cited to any medical evidence showing that his back pain significantly limits his ability to perform work activities. *See McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (explaining that the claimant has the burden of proving he has a severe impairment or combination of impairments). His medical records instead provide substantial evidence for the ALJ's determination that the back condition was an "isolated single incident or sprain," for which he was treated conservatively. A.R. at 19, 233-34 (indicating that Mr. Freeman reported "feel[ing] better" prior to being discharged from the emergency department where he sought treatment for his back). *See also id.* at 245-46 (noting that Mr. Freeman was "able to get on and off the exam table without difficulty by himself" and "walk across the room without an assist device with a normal gait").

But even if the ALJ erred in making this determination, and Mr. Freeman's back pain qualified as a severe impairment, any such error was harmless. "[T]he finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). At step three, the ALJ must then "determine if the applicant has a severe impairment or a

combination of impairments, whether severe or not, that qualify as a disability," considering the claimant's medical condition "as a whole." *See id.*; *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). The ALJ here did just that. At step two, the ALJ found that Mr. Freeman suffered from several severe impairments, including degenerative arthritis of the right ankle, partial Achilles tendon rupture of the left leg, and alcohol and marijuana abuse.[1] Although the ALJ found that Mr. Freeman's back pain was not a severe impairment, the record demonstrates that she considered and discussed these symptoms at subsequent steps of the sequential analysis. Accordingly, any error in failing to find that Mr. Freeman's lower back pain was severe was harmless because the symptoms were nonetheless considered in the subsequent steps of the ALJ's analysis.

### III

Substantial evidence also supports the ALJ's determination that Mr. Freeman retained the RFC to perform a wide range of medium and light work. Contrary to Mr. Freeman's arguments on appeal, the ALJ heavily relied on and gave significant weight to Dr. Harriet Steinert's Medical Source Statement, which addressed Mr. Freeman's ability to do work-related activities. Dr. Steinert opined that Mr. Freeman could continuously lift up to 20 pounds and occasionally lift up

---

[1] Substantial evidence supports the ALJ's findings that Mr. Freeman suffered from alcohol and drug abuse. *See, e.g.*, A.R. 56-57, 222, 238, 245 (containing inconsistent reports of drug and alcohol use). *See also* A.R. at 25 (finding that Mr. Freeman had "been less than forthcoming in describing his drinking and use of marijuana at the hearing as compared to his admissions to the consultative examiner").

to 100 pounds, activity which is consistent with the RFC for medium work. *Compare* A.R. at 247, *with* 20 C.F.R. § 404.1567(c) (defining medium work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds"). In addition, she opined that Mr. Freeman could sit for up to eight hours, walk for up to two hours, and stand for up to two hours in an eight hour work day. *See* A.R. at 248.[2]

On appeal, Mr. Freeman argues that he can only perform sedentary work given Dr. Steinert's opined limitations that he could only stand for two hours and walk for two hours in an eight-hour day. He further contends that he cannot perform light work because it requires standing for up to six hours in an eight-hour day. The definition of medium work, however, does not include any standing or walking limitations, and only requires the lifting of up to 50 pounds, which Dr. Steinert opined Mr. Freeman has the ability to do. *See* 20 C.F.R. § 404.1567(c). Similarly, the regulations define light work as involving the "lifting [of] no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id*. § 404.1567(b). Generally, if someone can do

---

[2] Mr. Freeman appears to misread Dr. Steinert's report as opining that he could "sit for 10 to 20 minutes but could only walk for 10 minutes." Appellant's Br. at 4, 23. He further argues (inconsistently) that Dr. Steinert opined that he could either stand for up to two hours *or* walk for up to two hours in a standard eight hour workday. *See id.* at 4. Dr. Steinhert's report instead indicates that Mr. Freeman self-reported more severe limitations on his ability to walk and stand, which Dr. Steinert declined to credit. *See* A.R. 245. She opined that Mr. Freeman could walk for up to two hours *and* stand for up to two hours in an eight hour workday. *See* A.R. at 248.

medium work, the regulations provide that he or she can also do sedentary and light work. *Id.* § 404.1567(c).

In arguing that he is limited to sedentary work, Mr. Freeman appears to rely on SSR 83-10, which notes that "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour day." SSR 83-10, *available at* 1983 WL 31251, at *6. The regulations, however, expressly provide that light work may require either "a good deal of walking or standing, *or* . . . sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (emphasis added). Dr. Steinert's medical opinion did not include any limitations on Mr. Freeman's ability to push and pull, and she opined that he could continuously lift up to 20 pounds and occasionally lift up to 100 pounds. *See* A.R. 249 (noting that Mr. Freeman could push, pull, and operate foot controls "continuously"). Accordingly, Mr. Freeman's reliance on SSR 83-10 to prove that he is incapable of performing medium or light work is misplaced.[3]

**IV**

The ALJ also applied the correct legal standard in performing the final step of the sequential analysis, which asks "whether there are significant numbers of

---

[3] We are not persuaded by Mr. Freeman's argument that the ALJ engaged in "sit and squirm" jurisprudence. The record reveals that the ALJ did not substitute her own judgment regarding Mr. Freeman's condition for that of the medical experts. *See Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982) (holding that the ALJ may not engage in "sit and squirm" jurisprudence by "subjectively arriv[ing] at an index of traits which he expects the claimant to manifest at the hearing").

jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).   Because the ALJ concluded that Mr. Freeman could not perform the full range of medium work, she properly sought testimony from a VE regarding the types and number of jobs that existed in the national economy that Mr. Freeman could perform given his limitations.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004) (explaining that "[t]here are two avenues by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy": (1) by applying the Grids; or (2) by the use of a VE, an expert on the kinds of jobs an individual can perform based on his capacity and impairments); *id.* at 1242 (explaining that it is inappropriate for the ALJ to rely exclusively on the Grids where the claimant is unable to perform a full range of work at a given RFC).[4]

The vocational expert's testimony constituted substantial evidence that there are a significant number of jobs in the national economy that Mr. Freeman could perform because the ALJ properly "pose[d] . . . hypothetical question[s] which comprise[d] all of the claimant's [credible] impairments." *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir. 2007) (internal quotation marks omitted).

---

[4] Mr. Freeman's argument that the ALJ did not properly apply the Grids appears to be premised on his contention that his RFC was limited to sedentary work.  As noted above, however, substantial evidence supported the ALJ's determination that Mr. Freeman could perform a wide range of medium and light work.

Mr. Freeman argues that the ALJ erred by not adjusting the hypothetical posed to the VE in light of Dr. Steinert's post-hearing consultative examination. Dr. Steinert's opined limitations on Mr. Freeman's ability to stand and walk, however, were consistent with the ALJ's RFC determination and were reflected in the hypotheticals posed to the VE. Moreover, the hypotheticals posed by the ALJ to the VE included limitations, such as the use a cane, which were more restrictive than the limitations contained in Dr. Steinert's Medical Source Statement. Even with these additional limitations, the VE testified that jobs existed in the national economy that Mr. Freeman could perform. Thus, the hypotheticals posed by the ALJ were consistent with the RFC determination and adequately considered all of Mr. Freeman's credible limitations. *See Ingram*, 496 F.3d at 1270 ("The hypothetical need only include 'the claimant's impairments,' . . . not each and every symptom of the claimant.") (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir.2002)). Accordingly, the ALJ did not err in performing the final step of the SSI sequential analysis.[5]

---

[5] Contrary to Mr. Freeman's suggestion otherwise, the ALJ had no duty to order an MRI of his feet and ankles. Instead, the claimant bears the burden of proving his disability. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The ALJ fulfilled her obligation to develop a full and fair record with substantial evidence showing that there are jobs in the national economy that Mr. Freeman could perform by ordering a consultative medical examination with Dr. Steinert and by consulting with the VE. *See Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989).

**V**

For the foregoing reasons, we affirm the denial of Mr. Freeman's application for supplemental security income.

**AFFIRMED.**